P. J. STOFFELS v. GEORGE J. BROWN, as Sheriff of Stark County, North Dakota.

(163 N. W. 834.)

**Personal property — mortgage on — bill of sale — estoppel — waiver — agency — jurisprudence — maxim of — act of third person — one of two innocent persons — negligent one must suffer.**

It is a maxim of jurisprudence, when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer.

Opinion filed March 3, 1917.  Rehearing denied July 10, 1917.

Appeal from the District Court of Stark County, Honorable *W. C. Crawford,* Judge.

Affirmed.

*Linde & Murphy* and *M. L. McBride,* for appellant.

A mortgagee can no doubt waive the mortgage by his conduct, but in this case there is not the slightest legal or other evidence to show a waiver, by acts or conduct, and in addition there is the direct and positive evidence of the mortgagee that he did not waive his mortgage, but expected it to be paid out of the proceeds of the sale to be consummated in his office.  New England Mortg. Secur. Co. v. Great Western Elevator Co. 6 N. D. 407, 71 N. W. 130.

There must be a showing of either direct or implied consent to waive the mortgage.  Peterson v. St. Anthony & D. Elevator Co. 9 N. D. 55, 81 Am. St. Rep. 528, 81 N. W. 59; Driscoll v. Murphy, 59 Neb. 210, 80 N. W. 813; Seymour v. Cargill Elevator Co. 6 N. D. 444, 71 N. W. 132; Trabuc v. Wade, — Tex. Civ. App. —, 95 S. W. 616; Bowman v. Eppinger, 1 N. D. 21, 44 N. W. 1000.

There being no evidence of waiver or release of the mortgage in this case, there was question of fact in such connection to be submitted to

the jury; and the court should have directed a verdict for defendant, or defendant's motion for a new trial should have been granted. State Bank v. Bismarck Elevator & Invest. Co. 31 N. D. 102, 153 N. W. 459; Jones, Ev. p. 906; Star Wagon Co. v. Matthiessen, 3 Dak. 233, 14 N. W. 107; Dickinson v. Hahn, 23 S. D. 65, 119 N. W. 1034; Lowry v. Piper, 20 N. D. 637, 127 N. W. 1046.

*F. E. McCurdy* and *H. E. Haney,* for respondent.

A mortgagee may waive his mortgage by his silence, his acts and conduct, or by oral declarations. Whether or not he does so in any contested case, and where this is a material and disputed matter, is very properly a question for the jury, and the trial court committed no error in submitting such question to the jury, and there being substantial evidence to sustain the verdict, it should not be disturbed. Simmons v. McConville, 19 N. D. 793, 125 N. W. 304.

Plaintiff had actual notice of the mortgage when he purchased the property of the mortgagor, but he insisted that this be cared for, and was told by the mortgagor that he had authority from the mortgagee to sell and would procure and execute a bill of sale, which he thereafter did, and it appears that the bill of sale was drawn and witnessed by the mortgagee. New England Mortg. Co. v. Great Western Elevator Co. 6 N. D. 407, 71 N. W. 130; Peterson v. St. Anthony & D. Elevator Co. 9 N. D. 55, 81 Am. St. Rep. 528, 81 N. W. 59; Seymour v. Cargill Elevator Co. 6 N. D. 444, 71 N. W. 132; 2 C. J. 594; Equitable Loan & Secur. Co. v. Lewman, 3 L.R.A.(N.S.) 879 and note, 124 Ga. 190, 52 S. E. 599; Golding v. Brennan, 183 Mass. 286, 67 N. E. 239.

An agent has implied authority to do whatever is usual and necessary in the particular transaction in which he is engaged, and where one has authority to *sell* and *deliver* property, he has authority to collect the purchase money. 2 C. J. pp. 595, 600, §§ 231, 234.

Robinson, J. This is a suit against Mr. Brown, the sheriff of Stark county, to recover possession of personal property—a gray mare and colt—taken by him under a mortgage made by one Kramchuck.

As the complaint and the evidence shows, the plaintiff purchased the property in good faith for the sum of $175, receiving a bill of sale made by the mortgagor and owner of the property, and written, witnessed,

and acknowledged by M. L. McBride, who now claims the property under a chattel mortgage. The bill of sale shows payment by P. J. Stoffels; it conveys the property to P. J. Stoffels; it grants title to P. J. Stoffels; it delivers the property to P. J. Stoffels. Four times his name is written in the bill of sale by the same McBride who now seeks to avoid the bill of sale by him written, witnessed, and acknowledged as a notary public. The jury found a verdict for the plaintiff and against McBride, and he appeals, claiming that the evidence is insufficient to sustain the verdict. It is claimed there is no testimony showing that McBride had waived his mortgage lien or consented to a sale of the property without payment of the purchase price to him, but on this point the bill of sale was sufficient evidence to justify the verdict of the jury. It is in the usual form. It is signed by the mortgagor of McBride; it is in the handwriting of McBride; it discloses property included in his mortgage; it is witnessed by M. L. McBride; it is acknowledged by him as a notary public and given under his official seal. In the bill of sale the name of P. J. Stoffels is written four times by the hand and pen of McBride, and the writing appears to be that of a competent business man. If he did not trust his mortgagor to deliver the bill of sale and to receive the purchase price of the mare and colt, it were easy for him to have written in the bill of sale: "The purchase price must be paid to M. L. McBride." It is a maxim of jurisprudence that where one of two innocent parties must suffer for the act of a third, he by whose negligence it happened must be the sufferer. The bill of sale was a power of attorney to the mortgagor to deliver the bill of sale and to receive the purchase money. The judgment of the District Court is clearly correct, and it is affirmed.

CHRISTIANSON, J. (dissenting). I have no quarrel with the doctrine of law announced in the majority opinion when applied in a proper case. That doctrine is declared by our statutes to be one of the maxims of our jurisprudence (Comp. Laws 1913, § 7277). The trouble with the majority opinion is that the writer of that opinion has formulated a statement of facts in disregard of the evidence contained in the record, so as to bring the case within the maxim, rather than applied the maxim to the facts as established by the evidence.

There is no material conflict in the evidence in the case. The only possible question of fact is what inferences are to be drawn from certain uncontroverted facts. It is undisputed that one McBride held a chattel mortgage on the horses involved in this controversy, properly executed and delivered to him by one Kramchuck, who at that time was the owner of the horses. It is also undisputed that the mortgage was duly recorded in the office of the register of deeds of Stark county. The debt secured by the mortgage was past due and McBride, who had been trying to collect the same, caused Kramchuck to be called to his office with respect to the matter. The only evidence as to what took place at that time is the testimony of McBride. According to McBride's testimony, Kramchuck stated that he was unable to make any payment on the indebtedness, and requested permission to sell some of the property covered by the mortgage, for the purpose of paying off McBride's mortgage. Kramchuck further requested that McBride release his mortgage, which McBride refused to do, ·stating that he would release such mortgage only when the purchaser was brought to his office and the purchase price paid over to McBride and applied on the indebtedness. Kramchuck thereupon requested Mc-Bride to prepare for him a bill of sale of the horses involved in this controversy, which McBride did.

McBride testified positively that the name of the plaintiff was not written into the bill of sale by himself, but that he left a blank space where such name might be inserted.

It is undisputed that Kramchuck thereafter sold the horses to the plaintiff Stoffels. There is no dispute in the evidence as to what took place at the time of the sale. The only evidence as to what took place at that time is the testimony of the plaintiff, and his son Peter, and his son-in-law, Frame.

The plaintiff Stoffels testified, on his direct examination, as follows:

Q. Was there anything said at the time he talked to Kramchuck about whether or not the horses were clear?

A. There was a mortgage against the horses held by Mr. McBride, but he had the bill of sale to them . . .

Q. Did Kramchuck tell you that McBride had a mortgage on the horses?

A. Yes. . . .

Q. Did you afterwards pay for the horses?

A. If the horses were delivered with proper papers, the bill of sale, he would order Mr. Frame to pay them at the elevator.

Q. Did Frame afterwards pay for the horses according to his order?

A. Yes.

The son, Peter Stoffels, testified:

Q. And when you talked to Kramchuck out there, was there anything said about there being a mortgage on the horses?

A. Yes.

Q. What was said.

A. Well, we was down there and Frame told him he got a mortgage down there, Mr. Frame told Kramchuck that he had a mortgage against *it and he say when he put the mortgage off we pay him $175 when he bring us a bill of sale.*

Frame testified:

Q. Were you with them at the home of Kramchuck when they saw these horses in question?

A. Yes.

Q. What, if any, deal was made at that time?

A. I think they made an agreement of this kind with Kramchuck; that they were to take the horses home with them and keep them a few days and try them out to see if they proved satisfactory in working, and so on, and if they did they were to pay him $175 for the mare and colt, the two horses they got of him, *if he would get a release and bill of sale* from Mr. McBride. *McBride* had a mortgage on the horses.

It is asserted in the majority opinion as a fact that the name "P. J. Stoffels" appearing in the bill of sale is in the handwriting of Mc-Bride. This assertion, however, is not substantiated by one word of testimony, and is directly contrary to the positive testimony of McBride. And McBride's testimony to this effect is strongly corroborated by certain facts and circumstances in the case, and to some extent by the testimony of the plaintiff and one of his witnesses.

It will be noted from the testimony of the plaintiff, quoted above, that at the time the plaintiff received the horses Kramchuck stated that he (Kramchuck) then had a bill of sale. It also appears from the testimony of Frame that the horses were sold and delivered condi-

tionally to the plaintiff on that day, in order that he (plaintiff) might "keep them a few days and try them out to see if they proved satisfactory in working, and so on." It further appears from the testimony of Frame that Kramchuck did not deliver the bill of sale until some days thereafter. Hence, if Kramchuck had the bill of sale at the time he made the conditional sale and delivered the horses to the plaintiff, such bill of sale must have been prepared before he went to see Stoffels about the sale of the horses. The bill of sale, therefore, must have been prepared without any definite purchaser in view to be utilized whenever Kramchuck found a purchaser for the horses. Under such circumstances it would have been necessary to leave the space provided in the bill of sale for the name of the purchaser, in blank, in order that such name might be inserted, when the purchaser was found. The evidence also shows that McBride and the Sheriff spent considerable time in making search and inquiry to ascertain the whereabouts of the horses after Kramchuck had left the country. If it is true, as asserted in the majority opinion, that McBride knew that Kramchuck intended to sell the horses to Stoffels, obviously such search would have been unnecessary. These various inferences certainly tend to corroborate the testimony of McBride, rather than to contradict it.

The statement in the majority opinion must, therefore, be based upon comparison of handwriting by the members of this court. The only specimen of McBride's handwriting in the record is the bill of sale itself. And with all due respect to the expert knowledge of the writer of the majority opinion, an examination of the bill of sale leads me to the conclusion that the name "P. J. Stoffels" appearing in the bill of sale is not in the handwriting of McBride. The letters S. t and f, and the combination of the letters S and t in the word "Stoffels" are in every instance differently formed from where these letters or a combination thereof appear in other words written in the bill of sale.

The maxim set forth in and upon which the majority opinion is based involves negligence on the part of one party, and resulting injury to the other by reason of such negligence.

One of the essential elements of an equitable estoppel is that the person claiming the benefit thereof must have been misled and induced by the words or conduct of another to alter his position in such way that he will be injured if the other person is not held to the representation

or attitude on which the estoppel is predicated. 10 R. C. L. p. 697, § 25. "The vital principle is," said the United States Supreme Court (Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618), "that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations on which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault." "Acts done or knowledge acquired subsequent to the transaction out of which the estoppel is claimed to arise can have no bearing upon the question. The representation or conduct relied on to raise the estoppel must have been concurrent with or anterior to the action which they are alleged to have influenced." 16 Cyc. 741.

There is no contention on the part of the plaintiff that McBride's conduct induced plaintiff to purchase and pay for the horses. In fact, there is not even an intimation on the part of the plaintiff or any of his witnesses, that the plaintiff knew that McBride had prepared the bill of sale. And the undisputed testimony shows that the plaintiff did not know McBride at the time he purchased the horses, and that the plaintiff and McBride had never met until the day of the trial of the present action. Manifestly the doctrine of estoppel can have no application unless it was shown that plaintiff had knowledge of McBride's conduct, and that it was plaintiff's knowledge of and reliance upon such conduct which induced him to purchase the horses without requiring a release of the mortgage.

The principle of estoppel discussed in and upon which the majority opinion is based, was not even suggested in the trial court.

The only contention made by the plaintiff upon the trial, and the only question considered in the court below and submitted to the jury for determination, was whether McBride by his conduct constituted Kramchuck his agent to make sale of the horses, and thereby waived his chattel mortgage lien thereon.

While waiver may be said to belong to the family of estoppel, and the doctrine of estoppel to lie at the foundation of the law of waiver, they are nevertheless distinguishable terms, and there are several essential differences between the two doctrines.

"Waiver is the voluntary surrender of a right, estoppel is the inhibition to assert it from the mischief that has followed, waiver involves both knowledge and intention; an estoppel may arise where there is no intent to mislead; waiver depends upon what one himself intends to do, estoppel depends rather upon what he caused his adversary to do; *waiver involves the acts and conduct of only one of the parties, estoppel involves the conduct of both.*" 40 Cyc. 256. "A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right." 40 Cyc. 259.

"The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such *it must in all cases be intentional.* There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other is estopped thereby." 40 Cyc. 261. Waiver is a matter of fact to be shown by the evidence. 40 Cyc. 267. And the burden is upon the party claiming the waiver to prove it by the preponderance of evidence. 40 Cyc. 269. Waiver is a mixed question of law and fact. And as it is mainly a question of intent; and since intent is an operation of the mind, it should be proved and found as a fact, and is rarely to be inferred as a matter of law. But when only one inference can be drawn from the facts, as established by the evidence, it is the duty and province of the court to determine such question as one of law. 40 Cyc. 270.

It is a rule of law in this jurisdiction that unconditional consent, by a chattel mortgagee that the mortgagor may sell the whole or any part of the mortgaged property is to that extent a waiver of the mortgage lien. But when the mortgagee gives merely a conditional consent, "and the conditions imposed relate directly to matters connected with the sale itself, and not merely to promises or acts to be performed by the mortgagor after the completion of the sale,—then the consent does not become availing or effective until the condition is performed. . . . In the case of Whitney v. Heywood, 6 Cush. 82, the supreme court of Massachusetts held that, where the parties to a mortgage indorsed thereon an agreement that, if the mortgagor should sell any of the property, the mortgagee should discharge all claim on the same upon the receipt of the money therefor, that this agreement was conditional, and gave no

authority to the mortgagor to divest the mortgagee's interest in the property by a sale, except upon a performance of the condition of paying the purchase money to him. The purchaser in such case, if he knew of the agreement, knew all its qualifications and conditions precedent, and was properly bound by them. If he had no such knowledge, and the mortgage was duly recorded, be bought the property subject to the mortgage, and was bound to know that the mortgagor had no right to sell." Shortridge v. Sturdivant, 32 N. D. 154, 159, 155 N. W. 20.

In the case at bar as already stated the only evidence with respect to the conditions under which the bill of sale was prepared, and the authority, if any, given by McBride to Kramchuck to sell the mortgaged property, appears in McBride's testimony. And in order that there may be no misunderstanding as to whether McBride gave Kramchuck unconditional permission to sell the horses, and intended to waive his lien, I desire to quote this testimony as it appears in the record.

Q. And how did you come to draw the bill of sale, at whose request, and so on?

A. Well, I had sent for Kramchuck sometime before that and he had not showed up, and he came up to the office on the date this was drawn, and stated that he wasn't able to make payment of the note and he wanted to dispose of some of the property to pay it with, and he wanted me to give him satisfaction of the mortgage so that he could dispose of the stuff, and I told him I wouldn't do it. I told him that if he wanted to sell this stuff, after he had found the parties to dispose of it, to bring them down to me and pay me the money, and I would give them satisfactions.

In this connection it should be mentioned that the plaintiff called the coroner Davis apparently for the purpose of impeaching McBride's testimony by showing a certain statement made by McBride at the time Davis served on McBride a notice that plaintiff required defendant's sureties upon the redelivery bond to justify. On direct examination Davis testified: "As I remember the conversation that took place there at the time that McBride said that, if this Kramchuck, I believe the name was, had done as he agreed when he sold this property, that this matter would have been all settled up." Upon his cross-examination Mr. Davis admitted that there was considerable more conversation had,

and that McBride in such conversation probably told of his refusal to give a satisfaction to Kramchuck, and might have said that although he (McBride) never made any agreement to satisfy the mortgage and wouldn't do it, still if he (McBride) could have gotten hold of Kramchuck in any way and gotten the money out of him, the present lawsuit would never have arisen. It seems to me that it is wholly immaterial which version of the conversation be accepted. Manifestly the statement testified to by Davis as having been made by McBride is not at all inconsistent with McBride's testimony upon the trial. Of course if Kramchuck had done nothing further than McBride says he authorized him to do, the lawsuit would never have arisen.

I have quoted in this opinion every iota of evidence contained in the record with respect to the authority given by McBride to Kramchuck. And the record will be searched in vain for any other evidence, fact, or circumstance bearing on this question.

It is also asserted in the majority opinion that McBride constituted Kramchuck his agent for the purpose of selling the horses. Under our laws, an agency is either actual or ostensible. Comp. Laws 1913, § 6322. An agency is actual when the agent is really employed by the principal. Comp. Laws 1913, § 6323. And an agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who is not really employed by him. Comp. Laws 1913, § 6324. An agent has such authority as the principal actually or ostensibly confers upon him. Comp. Laws 1913, § 6336. Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess. Comp. Laws 1913, § 6337. Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess. Comp. Laws 1913, § 6338.

Ostensible agency, as well as ostensible authority, rests on the principle of estoppel, and for the reasons already stated, the facts in this case do not warrant the application of the principle of estoppel, as there is no contention that Stoffels had any knowledge of or placed any reliance upon anything that was said or done between Kramchuck and McBride. If Kramchuck was McBride's agent, such agency and the agent's authority must have been actual.

It is wholly immaterial whether the pivotal question in this case be deemed one of agency or of waiver. The result must be the same. In either case the plaintiff had the burden of proof, and must establish the material facts involved by a fair preponderance of the evidence. If the question be deemed one of agency, plaintiff must establish the fact of agency and the agent's authority by a preponderance of the evidence. Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37. If the question be deemed one of waiver, plaintiff must establish, by a preponderance of the evidence, the fact of waiver including McBride's intention to waive his lien. 40 Cyc. 269. The undisputed testimony shows that McBride refused to release his mortgage lien, and that the plaintiff had not only constructive but actual notice of the execution of such lien thereof at the time he purchased the horses. I do not believe that the plaintiff sustained his burden of proof.

## On Petition for Rehearing.

BIRDZELL, J. (concurring specially). I concur in the result reached in the original opinion, written by Mr. Justice Robinson, but I am not convinced that the name of Stoffels, appearing in the bill of sale, was written by McBride, nor do I believe that it makes any difference whether McBride, Kramchuck, or some third person wrote in the name "P. J. Stoffels" where it appears in the bill of sale. As I view the case it presents a question of agency, rather than of waiver or of estoppel. There is evidence to the effect that McBride authorized the mortgagor to sell the horses, collect the purchase price, and pay it to him to apply on the mortgage indebtedness.

It is true that McBride testifies that he prepared the bill of sale at Mr. Kramchuck's request, and that he told him at the time that, if he wanted to sell the horses, he should bring the parties to him and pay him the money, and he would give them satisfactions: but in my judgment there are other facts and circumstances in the case, from which the jury would have been warranted in finding an agency. It is difficult to see why McBride, a lawyer, would arm Kramchuck with a bill of sale witnessed by him, if he expected to have any prospective purchasers brought to him before the price was to be paid. The witness Davis testified that upon one occasion when he was in Mc-

Bride's office, McBride said that if Kramchuck had done as he agreed when he sold this property this matter would have been all settled up. In my opinion there was sufficient evidence to warrant the submission of the question of agency to the jury.

The trial court's instruction upon this was proper, and, finding no error in the record, I concur in an affirmance of the judgment.

BRUCE, Ch. J., and GRACE, J. I concur in the above opinion.

CHRISTIANSON, J. I adhere to the views expressed in my dissenting opinion.