## BROTHERHOOD OF AMERICAN YEOMEN, a Corporation, Respondent, v. FARMERS' EQUITY STATE BANK OF MANDAN, North Dakota, a Corporation, Appellant.

(178 N. W. 285.)

**Insurance — principal cannot disaffirm agent's authority and still retain benefit of his acts.**

1. Where a principal admits the agency of one who executes a promissory demand note, and signs his and the principal name thereon, and in such a way that the relation of principal and agent appears upon the face of the note, the note being given to a bank for a loan, and the money is advanced thereon and paid over, by the agent, to the principal, and the principal thereafter denies the authority of the agent to thus execute the note, such principal is in no position to claim the right to retain the money it received upon the note, while denying liability thereon. It cannot disaffirm the authority of the agent to make the contract, and at the same time retain the benefit thereof of his unauthorized act.

**Banks and banking — bank held to have authority to charge note against depositor's account.**

2. Where an agent borrowed money upon a promissory demand note from

NOTE.—As to what constitutes an implied ratification of an unauthorized loan effected by an agent, see notes in 6 L.R.A. (N.S.) 311, and 52 L.R.A. (N.S.) 571.

As to whether mere acceptance of the benefits by the principal is a ratification of the agent's unauthorized use of a third person's money for purposes beneficial to principal, see note in 15 L.R.A. (N.S.) 693.

On effect of ratification by principal of agent's unauthorized contracts, see note in 5 Am. St. Rep. 109.

a bank, and signed the same in the manner above stated, and the principal denies authority of the agent to sign the note, but receives and retains the benefit and proceeds of the loan for which such note is given, and where the principal subsequently has a deposit in the same bank, the bank may charge the note to that account.

Opinion filed June 7, 1920. Rehearing denied June 19, 1920.

Appeal from an order and judgment of the District Court of Morton County, Honorable *J. M. Hanley,* Judge.

Reversed and remanded.

*Nuchols & Kelsch,* for appellant.

Whoever deals with a corporation by its purported agent does so at his peril as to the existence of the relation of principal and agent between the corporation and the purported agent. Grant County State Bank v. Northwestern Land Co. 28 N. D. 479.

It is also true as a general proposition that even if a corporation borrowing money has no implied power to do so, it must repay money actually received by it and used for its benefit. 7 R. C. L. § 587; Grant County State Bank v. Northwestern Land Co. 28 N. D. 510.

Ostensible authority or apparent authority is inferred from signature of said notes in such representative capacity. Swedish American Bank v. Koebernick, 117 N. W. 1020.

Where corporate officers or agents, without authority, borrow money for the corporation, and the money is received and used for the benefit of the corporation, the corporation ratifies the contract under which the money is paid. Corporations, 7 R. C. L. § 667; Grant County State Bank v. Northwestern Land Co. 28 N. D. 507.

*L. H. Connolly,* for respondent.

The person who deals with the agent does so at his peril. He is bound to know that the person with whom he deals is the agent of the person whom he claims to represent, and he is also bound to know the extent of the agent's authority. Corey v. Hunter, 10 N. D. 5; Stock Exch. Bank v. Williamson (Okla.) 50 Pac. 93; Martinson v. Kershner, 32 N. D. 46.

In order to show a ratification by a principal of the unauthorized act or contract of an agent by the acceptance and enjoyment of the benefits, it must appear that the principal had knowledge of the material

facts, or that he intentionally accepted the benefits without inquiry. Jewell Nursery Co. v. State (S. D.) 59 N. W. 1025; Smith v. Lynch (Cal.) 43 Pac. 670; St. John & Marsh v. Cornwall (Kan.) 35 Pac. 78; Schull v. New Budsell (S. D.) 86 N. W. 64; Jackson v. Badger (Minn.) 26 N. W. 908; Stout v. McLaughlin (Kan.) 15 Pac. 902.

GRACE, J. This action is one by plaintiff to recover the sum of $326.23, which he claimed to have on deposit in defendant's bank. The defendant refused to honor plaintiff's check in that sum.

The case was tried to a jury, and, at the close of the case, each party moved for a directed verdict, after which the court discharged the jury and made findings of fact and conclusions of law, adjudging and determining that plaintiff recover judgment in the sum of $360.99, and judgment was accordingly entered for this sum. A motion to vacate and set aside the judgment and for a new trial was denied.

The facts are not in dispute. Plaintiff is a foreign corporation, with its principal office in the city of Des Moines, Iowa. A local lodge or chapter was organized in the city of Mandan, of which one August Usselman was duly elected and acting as its correspondent or secretary, from the 11th day of August, 1917, until the 18th day of September, 1918.

The plaintiff carried an account in its corporate name in defendant bank. The correspondent had sole and exclusive charge and custody of the financial affairs of the local chapter during all the time he served in that capacity.

On August 11, 1917, he purchased a draft, payable to the plaintiff, for $273.30, and in payment thereof gave his note, payable to the defendant, for $185.70, and paid $87.60 in cash, which was signed, The Brotherhood of American Yeomen, by August Usselman, Secretary.

On August 24th, Usselman paid $118.10 on the note, leaving a balance of $67.60, which he paid on September 14, 1917.

On September 14th, he purchased a second draft, payable to the defendant, in the sum of $266.55, and gave a demand note, payable to the defendant bank, and signed it in the same manner as he had signed the previous note.

On October 5, 1917, he paid on this note $197.50, and on October 18th, paid the balance. On the 18th day of October, he purchased a

third draft, payable to plaintiff, in the sum of $322.86, and for this he paid $35 in cash, and gave a demand note, payable to the defendant, signed in the same manner as the notes above mentioned. He paid this note October 18th, and purchased a fourth draft, in the sum of $313.65, paying for it $31.48 in cash, and gave a promissory note for $282.17, signed in the same manner as the former notes.

He paid this note on December 10th and purchased a fifth draft for $328.60, payable to plaintiff, and paid for this $26.28 in cash, and gave his note for $332.32. On this note, he paid $14.13 on December 10th, leaving a balance of $288.19 still due on the note.

During the months of January, February, March, and May, the secretary purchased other drafts from the defendant, which he paid for in cash and with checks.

On July 6, 1918, the secretary renewed the promissory note dated December 10th. The amount of the new note, given in place of the old note and interest, amounted to $305.23.

In the fall of 1918, August Usselman died. Defendant presented its demand renewal note to the officers of the local chapter for payment, and payment was refused.

On the 10th day of July, 1919, the defendant bank applied the sum of $326.23, which the plaintiff had in the bank in the form of a general deposit, in payment of the principal and interest then due upon the said demand note, and gave notice of its action to the local office of the plaintiff, and surrendered the note, indorsed and fully paid.

On July 11, 1919, one Helbling, an officer of the local chapter, in his official capacity, signed and presented to the defendant bank a check, in the sum of $326.23, payment of which was refused on the claim that at that time plaintiff had no funds in the bank, and at the same time gave notice that the general deposit in question had been applied in payment of the principal and interest due upon the note in suit.

It is admitted that Usselman was the agent of plaintiff; that he acted as such during all the time when the various remittances above mentioned were made to the plaintiff. He had actual authority to collect from the membership of the homestead (the local lodge) the money, in the way of assessments, etc., which the members were required to pay at various times, in accord with the rules, regulations, and constitu-

tion of the plaintiff; and it was his duty, when collection thereof was made, to remit the same to the plaintiff at Des Moines.

It does not appear that he had any actual authority from plaintiff to borrow money nor execute the notes which were executed, and if he had executed note or notes to the bank or any other person, without the knowledge or consent of the plaintiff, and had received the money thereon, and converted it to his own use or otherwise disposed of it, and paid no part of it to the plaintiff, we think, in such case, the plaintiff would be under no liability on such note, and could not be bound by the acts of its agent, thus acting entirely without authority.

In this case, however, while it may be true the agent was acting outside of his authority in executing the note in question and receiving the money thereon, it also appears, and it is true, that plaintiff received all the money from its agent which he procured on the note.

The plaintiff cannot in one breath say the agent had no authority to execute and deliver the note, and in the next say that, notwithstanding he had no such authority, it is entitled to the proceeds or fruit of his unauthorized act.

We think what we have said is decisive of this case. The question of the ostensible authority of Usselman to execute the note in question has been raised. We do not think this is a material issue herein, nor is a decision on that question necessary to a decision of the case. In fact, in view of what we have said, we think whether Usselman had or had not ostensible authority is immaterial, and that subject needs no further consideration.

We think the laws, rules, and constitution of the plaintiff are no notice to the defendant, in the absence of proof that it had knowledge or notice thereof.

Assuming that they are usually binding on a member of the lodge or organization, even if it should appear such member had no actual knowledge thereof, and this, on the theory that, being a member, he is presumed to have knowledge of its laws, rules, and constitution, etc., it does not follow that they are notice to a stranger to the organization or lodge.

We are satisfied the court was in error in concluding, as a matter of law, that defendant was indebted to plaintiff in the sum of $326.25, or any other sum; and further was in error in holding that the allega-

tions of the complaint are true. Most, if not all, of the errors assigned are well taken.

We are of the opinion the order and judgment appealed from should be reversed. They are reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

The appellant is entitled to his costs and disbursements on appeal.

BIRDZELL, ROBINSON, and BRONSON, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). I am constrained to dissent from the foregoing opinion.

The plaintiff is a fraternal benefit society, having a lodge system with a ritualistic form of work and a representative form of government. It is incorporated under the laws of the state of Iowa, and its head office is in the city of Des Moines. It has a supreme governing or legislative body known as the Supreme Conclave, and subordinate lodges or branches. Each state constitutes a grand jurisdiction known as a State Conclave. The local lodges are called Homesteads. The State Conclave is made up of representatives from the different Homesteads. The State Conclave meets annually. At such meeting it is required to levy the necessary assessment upon the members in the state to maintain in force the benefit certificates issued to such members. The constitution provides that such "assessment shall be collected by the state correspondent through the Homesteads in that state." It further provides: "A Homestead correspondent shall transmit the per capita tax provided for the maintenance of the State Conclave to the state correspondent, without a vote thereon. If any Homestead correspondent fails to transmit such funds to the state correspondent, said Homestead may be suspended by the grand foremen when receiving notice thereof from the state correspondent, and such Homestead shall remain suspended until the assessments are paid."

A local lodge or Homestead had been established at Mandan. In July, 1918, and for sometime prior thereto, one August Usselman was the correspondent of the Mandan Homestead. It is true, as stated in the majority opinion, that Usselman, from time to time, borrowed money

from the defendant bank upon promissory notes, to which he signed the name of the plaintiff by himself as secretary; but there is not a scintilla of evidence tending to show that he had any authority to do so. Nor is there any evidence—nor for that matter any contentions—that the plaintiff had any notice or knowledge that such loans were being made. The positive testimony is, also, that the local homestead never authorized Usselman to make such loans. One of the officers of the local lodge testified that Usselman was found to be short in his accounts, and the only reasonable inference to be drawn from the evidence is that he misappropriated the moneys collected from the local members, and that the money he borrowed from the defendant bank from time to time was used to make up his shortages.

The majority members hold that the plaintiff is liable on the ground that it received the benefits of the notes executed by Usselman in its name. I do not believe that this principle is applicable here, nor am I aware of any principle upon which the plaintiff can be held liable on the notes executed by Usselman. "It is fundamental in the law of agency that the power of every agent to bind his principal rests upon the authority conferred upon him by that principal, and this authority as to third persons consists of the powers intentionally conferred, those incidental to or implied from the main powers conferred, those which custom and usage have added to the main powers, and those which the principal has caused, as by a previous course of dealing, persons dealing with the agent to believe that the principal has conferred, as well as power, the exercise of which by the agent the principal is by his conduct estopped to deny, or which he has subsequently approved and ratified. Without this authority for which the principal himself, by acts or conduct, has become responsible, the agent can bind only himself." 2 C. J. 560. See also Comp. Laws 1913, §§ 6325–6343, 6352; Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37.

The defendant must have known that a fraternal benefit society, organized and doing business as the plaintiff, does not authorize officers of the local lodge to borrow money or execute promissory notes in its behalf. If the local officers had such authority it would indeed be difficult, if not impossible, for the society to make the reports which it is required to make to the insurance departments of the different states. In fact it is quite apparent that the defendant did not believe

that the note was a valid obligation against the plaintiff. The cashier admitted that payment was never demanded from the plaintiff. He also stated that the defendant had caused the note to be presented as a claim against the estate of August Usselman.

This is not a case where an agent has borrowed money and expended it in discharging obligations against his principal. In such case the principal receives the benefit, and his liabilities are not enlarged. In this case the plaintiff had assumed certain liability as an insurer. The liability was evidenced by certain benefit certificates issued to members of the Mandan Homestead. Its liability as an insurer was conditioned upon payment to it, by those insured, of certain premiums or assessments. For the moneys which the plaintiff received from Usselman it continued the benefit certificates in force,—*i. e.,* it in fact assumed a liability equal to the amount of moneys received. Whatever ·benefits were received were received by Usselman and by the persons whose benefit certificates were kept in force. The plaintiff received no benefit. Its total assets were not increased, because, although it received the money which Usselman borrowed from the defendant bank, by virtue of such payments into its treasury, its liabilities were increased in a corresponding amount. Hence, if the plaintiff is required to pay the note in suit its liabilities will be increased in precisely the amount of the judgment, and for this liability it will receive no corresponding benefit. If similar liabilities have been incurred in other subordinate lodges, and plaintiff required to pay them, its assets—funds held in trust for the beneficiaries will be greatly impaired. In the circumstances shown to exist in this case, I do not believe that the principle invoked by the majority members has any application. See Calhoun v. McCrory Piano & Realty Co. 52 L.R.A.(N.S.) 571, and extended note thereto.