**Merlyn WEBER, Scott Weber, by his next friend, Merlyn Weber, Jay Weber, by his next friend, Merlyn Weber, and Todd Weber, by his next friend, Merlyn Weber, Appellants,**

v.

**TOWNER COUNTY, a public corporation, and Gerrard Township, a public corporation, Appellees.**

No. 76–2109.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1977.

Decided Nov. 10, 1977.

1002

Mary Jeanne Coyne, Minneapolis, Minn. (argued) for appellants; John Hjellum, Jamestown, N. D. and Ralph E. Koenig, Minneapolis, Minn., on brief.

Thomas L. Zimney, Grand Forks, N. D., (argued) for appellees; Edward C. Gillig, Grand Forks, N. D., on brief.

James R. Britton, Cando, N. D. (argued) for Gerrard Township.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This diversity action was brought by a Montana plaintiff for himself and as next friend to his three minor sons against Gerrard Township and Towner County, North Dakota, to recover damages for personal injuries sustained when plaintiff's converted school bus camper ran into a washout on a township road in Gerrard Township, Towner County, North Dakota, at about 3:15 a. m. on June 8, 1974. The district court [1] entered an order granting Towner County's motion for summary judgment and thereafter entered an order of final judgment pursuant to Fed.R.Civ.P. 54(b).[2] We reverse and remand.

In the early morning hours of June 8, 1974 the Merlyn Weber family was returning from a father-son fishing trip in Canada when their school bus camper abruptly encountered a washed out portion of a Gerrard Township road. Mr. Weber, the driver, saw no warning sign, and was unaware of the dangerous condition until he was virtually upon it. After reporting the accident, Weber did see a sign attached to a truck wheel lying in a grassy ditch on the side of the road.

The graveled township road on which the accident occurred had washed out in mid-April, 1974, at a point where a culvert passed beneath it. The washout was discovered immediately, though independently, by two members of the Gerrard Township Board of Supervisors, a three-member board charged with supervision over road maintenance throughout the township. Both Township Supervisor Rollie Farbo, at the north end of the washout, and Board Chairman Thomas Solberg, at the south end, perceived the need to erect warning signs and to notify Towner County so that repairs could be made. Because the township owned no road equipment, it ordinarily called upon and paid Towner County to do repair and maintenance work on township roads.

Consequently, when Supervisor Farbo witnessed the washed out road collapse beneath a truck one April day, he hurriedly sought out the most accessible county em-

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

2. The action against Gerrard Township is apparently still pending.

ployee, James Gerrard, a member of the Towner County road crew which usually did the road work in Gerrard Township. Farbo requested Mr. Gerrard to put up a warning sign and to help pull the truck out of the mud. Mr. Gerrard located a movable "Road Closed" sign affixed to a post set in an old truck wheel which had been made by the Towner County road crew; he placed the sign in the township road about three-quarters of a mile north of the washout.

At approximately the same time, Gerrard Township Board of Supervisors Chairman Thomas Solberg came upon the south end of the washout where he erected a permanent barricade consisting of two steel stakes driven into the road and connected by a reflectorized "Road Closed" sign. Soon thereafter, Solberg contacted Roy Peterson, a member of the Towner County Board of Commissioners who as commissioner for the district in which Gerrard Township was located was supervisor of Towner County road work in that district.

Although Peterson had already been informed of the washout by county employee James Gerrard, Peterson and Solberg discussed the repair of the road and the difficulties which could be expected due to the wet ground. Both men seemed to understand that the repairs would be made in the manner customarily followed by the parties in fixing township roads. When the ground became dry enough and when the work could be scheduled, Commissioner Peterson would dispatch a road crew to repair the washout, and the township would in turn pay the county for the work. As with other work on township roads, the minutes of the Towner County Board of Commissioners reflect no specific action taken by the Board with respect to this particular project.

During the next several days, both Commissioner Peterson and members of the Gerrard Township Board of Supervisors checked the washout occasionally to ascertain if it had dried sufficiently to permit repairs. After about a week, Commissioner Peterson sent out a road crew consisting of James Gerrard and another county employee to make the repairs. They were not successful because the county's Euclid road scraper became stuck in the mud and had to be hauled out.

Six weeks later when the Webers' bus appeared on the scene, the road remained unrepaired. Subsequently, the county road crew completed repair of the washout and Gerrard Township duly paid the county for the work, though the final bill may have been less than the township expected since the county apparently applied to this project federal aid available to it that year by virtue of its status as a disaster area.

The Webers complain that Towner County was negligent in failing to repair the road or to provide adequate warning of its defective condition. They claim that the county's duty to exercise reasonable care arose out of (1) the contract to repair the road made by County Commissioner Roy Peterson and Township Supervisor Thomas Solberg; and (2) Towner County's action in undertaking to place a warning sign and to repair the road. The plaintiffs contend that there existed a lawful and enforceable oral contract between the county and township to repair the road, though it may have been procedurally defective in its lack of formal approval by the Towner County Board of Commissioners. They further maintain that even had there been no formal contract, the county road crew in fact commenced the repair work and ultimately completed it with the county receiving payment for it, and that having undertaken performance of the project the county thereby assumed a duty to exercise reasonable care in the service it provided.

The district court determined that under North Dakota law the Gerrard Township Board of Supervisors had primary responsibility for maintenance of the washed out township road and that an obligation on the part of Towner County to place adequate warning signs or to repair the washout could only have arisen from a contractual arrangement between the township and the county. The court found that no such formal contract existed between the township and county in that the County Board of Commissioners had not acted collectively to

make a formal contract with the township or to delegate authority to Commissioner Peterson to make the specific contract, nor had the Board officially approved the contractual arrangement actually made between Peterson and Township Supervisor Solberg as would have been required for liability to attach to the county. The district court stated that the lack of affirmative action on the part of the County Board of Commissioners negated any notion of express contract, and that no conduct was alleged reflecting the existence of an implied contract prior to the accident.

Concluding that a contract did not exist between the township and county, the district court granted the county's motion for summary judgment, and expressed the view that the actions taken by road crew employee Gerrard and county Commissioner Peterson in placing a warning sign and in repairing the road were their individual actions for which the county could not be rendered responsible in contract or in tort. We do not agree.

■ The narrow issue before this court is whether the district court erred in granting the county's motion for summary judgment. We have repeatedly recognized that summary judgment is an extreme remedy and one which is not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. *Bellflower v. Pennise,* 548 F.2d 776 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207 (8th Cir. 1976); *Percival v. General Motors Corp.,* 539 F.2d 1126 (8th Cir. 1976); *Windsor v. Bethesda General Hospital,* 523 F.2d 891 (8th Cir. 1975).

We have further observed that summary judgment does not usually provide a satisfactory approach in tort cases. *Bellflower v. Pennise, supra,* 548 F.2d at 777; *Hanke v. Global Van Lines, Inc.,* 533 F.2d 396 (8th Cir. 1976); *Williams v. Chick,* 373 F.2d 330 (8th Cir. 1967). We are no less troubled by this case than by others in which a district court has entered summary judgment in a tort action.

■ In passing upon a motion for summary judgment the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings, depositions and affidavits filed in the case. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Robert Johnson Grain Co. Chemical Interchange Co., supra,* 541 F.2d at 210; *Percival v. General Motors Corp., supra,* 539 F.2d at 1129.

■ The record in the instant case includes among others the depositions of: Thomas Solberg who had served as a Supervisor of Gerrard Township for over seventeen years; Rollie Farbo who had been a Gerrard Township Supervisor for over two years; and Roy Peterson who had been a Towner County Commissioner for seven years. The testimony of these men indicates that the county owned road machinery which the townships in the county did not have and which the county could not afford to maintain exclusively for county roads; and that for their mutual benefit the county did road work for the townships, charging and receiving payment at a lesser rate than the townships might otherwise have to pay. Each county commissioner was assigned to supervise the county's roadwork in several townships, and it was his duty to determine where and when the work was done, and to see that it was completed. Roy Peterson was the county commissioner whose territory included Gerrard Township.

For as long as these men could remember, at least as long as they had been in office, the road business between Towner County and Gerrard Township had been conducted in virtually unvarying fashion. Under the standard operating procedure, when a township road became in need of repair, one of the township supervisors, usually Chairman Thomas Solberg, immediate-

ly notified County Commissioner Roy Peterson and gave him an "order" for the work the township wanted done. When Peterson found available time the county road crew would be dispatched to do the job. For some things, particularly snow removal and ordinary maintenance, the county customarily acted without an "order" from the township. Either way, the county would later bill the township, sometimes only once a year, and the township would remit payment to the county. Both the township supervisors and the county commissioner proceeded with the belief that Solberg and Farbo acted on behalf of Gerrard Township, that Peterson acted on behalf of Towner County, that Towner County did the roadwork, and that Towner County was tendered payment and accepted it. This was an on-going practice which had been adhered to for years by Towner County and Gerrard Township. The same procedure was followed with respect to repairing the washed out road in this case.

In viewing the facts in the light most favorable to the plaintiffs, the Webers would be entitled to the reasonable inferences that the Towner County Board of Commissioners could not have been unaware of the way in which roadwork business was for years carried on with Gerrard Township; that the Board countenanced the procedure by permitting county machinery and employees to continuously provide road services to Gerrard Township, and by accepting payment from the township in return; that the Board had at some time placed county roadwork in Gerrard Township under the supervision of Commissioner Peterson; that with respect to the washed out road here at issue, Peterson and the county employees he controlled acted within the confines of the established operating procedure in taking the township's "order" to repair the washout, placing the warning sign, and commencing the work; and that due care was not exercised in the warning of or repair of the washout.

■ A court is justified in granting summary judgment if, after viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all inferences reasonably deducible, the court is convinced that upon a trial of the case to a jury, a verdict in favor of the moving party would have to be granted. *Bellflower v. Pennise, supra,* 548 F.2d at 778. In this case, giving the Webers the benefit of the reasonable inferences and assuming their truth, a directed verdict in favor of the county might not have been proper.

North Dakota law provides that general supervision over township roads rests with the board of township supervisors, N.D. Cent.Code § 24–06–01, which may contract with the board of county commissioners for the repair of township roads without the necessity of advertising for bids, N.D.Cent. Code § 24–06–09; and such contracts are to include a condition that the contractor place suitable warning signs at the construction site, N.D.Cent.Code § 24–03–09. When the board of county commissioners is required to oversee the repair of roads or other property of the county, the board may appoint one or more members to personally supervise the repair work, N.D.Cent.Code § 11–11–17.

There is little dispute that Gerrard Township had primary financial responsibility for repair of the washed out road or that there existed no formal, written contract between the township and county for that particular road job. There is considerable evidence that the township informally and orally "ordered" the repair work from the county in a customary manner, and that it did so through Commissioner Peterson who was presumed by all parties to have been appointed, more or less permanently, to personally supervise on behalf of the board of county commissioners all county road business conducted in Gerrard Township.

The statutory provision concerning the appointment of a supervisor, N.D.Cent.Code, § 11–11–17, was construed by the Supreme Court of North Dakota in *Rolette State Bank v. Rolette County,* 56 N.D. 571, 218 N.W. 637 (1928), as authorizing the designation of a county commissioner as supervisor but not as implying that a commissioner has

power to contract for the construction or repair of roads, bridges or other county property. In *Rolette*, a county commissioner hired his two sons to repair roads within his district without the knowledge of the other commissioners and at a cost in excess of the taxes levied for road purposes. The Supreme Court of North Dakota held that no contract existed on which the county could be required to make payment to the sons stating that "[it is the intention] of the Legislature that the board of county commissioners shall act collectively and as a board, and that consequently the county is not bound by any action taken by the county commissioners as individuals. . . . In order to bind the county, there must be formal action on the part of the commissioners as a board." *Id.* at 639.

In the instant case the district court relied primarily on the holding in *Rolette* to conclude that because the record revealed no formal acceptance by the Towner County Board of Commissioners of a contract to repair the washout nor did it reflect a formal delegation of contractual power to Commissioner Peterson, that Peterson did not have authority to accept the order for road work on behalf of Towner County or to contractually bind the county. We find significant distinctions between *Rolette* and the case before us on appeal.

The holding in *Rolette* was based on a contract action in which the plaintiff was attempting to recover payment from the county for road services provided by independent contractors on county roads pursuant to a contract redolent with collusion and nepotism. The road repair contract made by the county commissioner with his two sons was an isolated arrangement which the other commissioners had no reason to anticipate, and which would have required illegal action by the county to make payments in excess of the taxes levied for repair purposes.

Unlike *Rolette*, this is a tort case in which a duty on the part of the county to provide due care may have arisen from an ongoing arrangement under which Towner County crews provided road services to Gerrard Township roads for which the county sought and received payment. The road repair agreement here at issue was made by the county commissioner charged with supervising county road work within the township and the elected township official charged with seeing that township roads were repaired. The arrangement was not an isolated occurrence, but followed the standard procedure established by the parties during a long term course of dealing that by its very nature must have been familiar to the county board of commissioners. The agreement was in no way collusive and could not have imposed an unplanned burden on the taxpayers since the county received payment for its services rather than suffering an excessive outlay. It appears to be an agreement between elected officials executed in good faith and in the public's interest with the singular intention of the parties being to repair a dangerous road condition as expediently and efficiently as possible.

The absence of formal action taken by the Towner County Board of Commissioners with respect to the paid service provided by the county pursuant to this one particular road repair order from Gerrard Township simply does not carry with it the same implication of impropriety as does the lack of collective board approval in *Rolette* when one commissioner committed excessive county funds to his own sons for work done on county roads. We do not find the holding in *Rolette* dispositive of the case at issue.

On the contrary, there is relevant authority to suggest that in North Dakota a contract may be implied giving rise to liability on the part of a governmental unit even where there are procedural defects in the formation of the contract such as a failure to fully comply with the procedures statutorily prescribed for the governmental unit to enter into that contract. *Brusegaard v. Schroeder*, 201 N.W.2d 899 (N.D.1972); *Grand Forks County v. City of Grand Forks*, 123 N.W.2d 42 (N.D.1963); *Northwestern Sheet and Iron Works v. Sioux County*, 76 N.D. 451, 36 N.W.2d 605 (1949);

**1008**

*Backhaus v. Lee,* 49 N.D. 821, 194 N.W. 887 (1923).

Towner County's motion for summary judgment should not have been granted if the Webers would be entitled to recover under any legal theory they could prove upon trial. We believe that the facts of this case as alleged by the plaintiffs and supported by evidence opposing summary judgment are such that reasonable men might differ as to whether ultimately they demonstrate liability on the part of the county under North Dakota law. In our opinion, there is a possibility that the plaintiffs might recover on a theory based on Commissioner Peterson's apparent authority to accept repair "orders" from the township and to undertake the work on behalf of the county.

■ The record indicates that at some point in the past the Towner County Board of Commissioners appointed Commissioner Peterson to supervise county road work in Gerrard Township, and that in carrying out his duties Peterson routinely made arrangements with township officials to repair township roads using county crews and equipment. By allowing payments from the township for such work and by permitting this practice to evolve into a regular course of business conducted over a period of years, the county board of commissioners may have established an agency by ratification in that it caused both Peterson and the township officials to believe that Peterson possessed the authority to make such agreements on behalf of the county board of commissioners. *See Bernard v. Madsen,* 52 N.D. 822, 204 N.W. 196 (1925); *Stoffels v. Brown,* 37 N.D. 272, 163 N.W. 834 (1917); N.D.Cent.Code chs. 3–01 to 3–04.

■ A valid ratification requires that the principal have power to confer authority for the act being ratified. N.D.Cent. Code § 3–01–08. The Towner County Board of Commissioners clearly had statutory authority to appoint Commissioner Peterson to oversee county road service in Gerrard Township, N.D.Cent.Code § 11–11–17. Failure by the board to formally pass upon each and every road service job pro-

vided by the county under Peterson's supervision and paid for by the township throughout the years need not negate the presumption of ratification of the well-established business practice which arises from the board's failure to repudiate the arrangements or to terminate such road repair services to the township. *See Askew v. Joachim Memorial Home,* 234 N.W.2d 226 (N.D.1975); *Russell v. Waterloo Threshing Mach. Co.,* 17 N.D. 248, 116 N.W. 611 (1908).

■ The unauthorized act of an agent purportedly done for the benefit of a principal can be subsequently ratified by the purported principal either expressly or by implication through conduct of the principal which is inconsistent with an intention to repudiate the agent's action. *Askew v. Joachim Memorial Home, supra,* 234 N.W.2d at 237. Based on the reasonable inference that the board of commissioners had knowledge of the hired services the county provided to township roads, it follows that the board had remained silent so long without repudiating the arrangements that Peterson and the township officials were justified in believing that the board acquiesced in the course and manner of business.

■ A principal cannot disaffirm the authority of its agent to make a contract, and at the same time retain the benefit of his unauthorized act. *Brotherhood of American Yeomen v. Farmers' Equity State Bank of Mandan,* 45 N.D. 532, 178 N.W. 285 (1929). Remittances by Gerrard Township for county road services had repeatedly been paid into Towner County coffers and in this case Towner County may even have used the washed out road as a basis for a request of federal aid. In these circumstances, the Towner County Board of Commissioners should not be heard to deny that Commissioner Peterson acted as an agent of the board.

■ An agency may be shown by circumstances such as the relation of the parties to each other and their conduct with reference to the subject matter of a particular contract as well as a previous course of dealing with the subject matter. *State*

*Automobile & Cas. Underwriters v. Skjons-by*, 142 N.W.2d 98, 104 (N.D.1966); *Scherbenske v. Maier*, 71 N.W.2d 770, 771 (N.D. 1955). In proving an agency affecting a particular transaction, the range of proof may be extended to cover similar and related transactions between the same parties. *Mischel v. Harnden*, 63 N.D. 107, 246 N.W. 644 (N.D.1933).

By offering evidence of the past course of dealing between Commissioner Peterson and Gerrard Township coupled with the acquiescence of the Towner County Board of Commissioners, it may be possible to show that there was created in Peterson an agency if not general in nature then for the limited purpose of arranging road repairs by Towner County on Gerrard Township roads. Such an agency would have provided Peterson with the authority to contractually obligate the county to repair the washed out road in this case thereby giving rise to the requirement that due care be exercised by the county in performance of the contract. N.D.Cent.Code §§ 3–03–01 and 03.

■ Regardless of whether it is established that Peterson acted as Towner County's agent in making an express or implied agreement with Gerrard Township, a contract obligation on the part of the county to repair the washout and to do so with due care may be found to have arisen as a matter of quasi-contract whereby a contract may be imposed by law in order to bring about justice and fundamental fairness. *See Beck v. Lind*, 235 N.W.2d 239 (N.D.1975); *Stark County v. State*, 160 N.W.2d 101 (N.D.1968); *Bismarck Hospital Ass'n v. Burleigh County*, 146 N.W.2d 887 (N.D.1966).

■ By virtue of the reasonable inferences that the Towner County Board of Commissioners was aware of the course of business conducted by Peterson and Gerrard Township and did nothing to prevent the county from retaining payment and perhaps even receiving federal funding for the repair of the washout, principles of equity may dictate that a binding contract be found between the county and township and that the board be estopped from denying liability for the events which transpired during the transaction. *See Rolette State Bank v. Rolette County, supra*, 218 N.W. at 640–41.

■ Similarly, as a matter of tort law, Towner County may be found to have incurred liability if Commissioner Peterson is determined to have in fact acted on behalf of the Towner County Board of Commissioners with respect to the repair of the washed out road on which the plaintiffs were injured. A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency. N.D.Cent.Code § 3–03–09.[3]

■ The plaintiffs contend that Towner County was negligent in failing to repair the washout or to provide adequate warning of the defective condition in the road. It is a basic tent of tort law that an actor, who may or may not have a duty to act, must, if he acts at all, exercise reasonable care to make his acts safe for others. Restatement (Second) of Torts § 324A provides that:

> One who undertakes, gratuitously or for consideration, to render services to

3. At the time this suit was filed, the statutes of North Dakota provided that any political subdivision of the state could insure against claims of loss, damage or injury against the political subdivision or its officers, agents and employees among others. By so insuring, the political subdivision waived its immunity against liability to the extent of the policy limits of such coverage. N.D.Cent.Code § 40–43–07. Shortly after this suit was instituted, the doctrine of governmental immunity was abolished by the Supreme Court of North Dakota in *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974); and the Legislature enacted provisions making

each political subdivision liable for injuries proximately caused by the negligence of its employees and setting dollar limitations on that liability. N.D.Cent.Code § 32–12.1–03. In conjunction with these provisions, we note some indication in the record that while Gerrard Township may not have carried liability insurance at the time of the Webers' accident, Thomas Solberg, Chairman of Gerrard Township Board of Supervisors, was under the distinct impression that the policy held by Towner County, which he had been shown, included an endorsement providing liability coverage for work done on township roads.

another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Assuming an agency, the record in the instant case appears to indicate conditions sufficient to subject Towner County to liability. The county, through Commissioner Peterson, undertook for payment the repair of a washed out road when such repair constituted a duty imposed by statute on Gerrard Township for the protection of third persons such as the plaintiffs. The county, following its initial failure to fix the washout, permitted the road to remain impassable for several weeks, guarded on the north by nothing more than a portable sign known by the commissioner in charge and his road crew to be removed on occasion for the passage of farm machinery. The county, by its actions in undertaking the repairs, induced the township to rely on its undertaking and to forego other remedies against the risk posed by the unguarded washout.

In undertaking the repair of the washout and the placement of the warning sign, neither Commissioner Peterson nor James Gerrard, the county road crew employee who erected the sign, intended their acts to be ultra vires in any sense. Rather, they believed in good faith, as did the Gerrard Township officials, that they were acting on behalf of Towner County with competent authority and within the scope of their employment.

If the acts of Peterson and the county road crew, unauthorized though they may have been, were ratified through acquiescence by the Towner County Board of Commissioners as outlined previously, then Towner County may have subjected itself to liability for the failure of Peterson and the county employees under his supervision to have exercised due care in repairing the washout and in providing adequate warning of the defective road condition. See 57 Am.Jur. Municipal, Etc. Tort Liability § 91 (1971).

We do not presume to decide whether there existed an agency, either actual or ostensible, between Commissioner Peterson and the board of commissioners, whether there was a contract between Towner County and Gerrard Township, whether Towner County had a duty to see that the north warning sign remained in place or indeed whether the County should be liable under any of the theories herein discussed. We simply conclude that under North Dakota law the case presents factual issues that should have been tried to the court or submitted to a jury under proper instructions, and that summary judgment was improvidently granted.

We reverse and remand for appropriate action not inconsistent with this opinion.