DORNER and others, Appellants, vs. SCHOOL DISTRICT No. 5 IN THE TOWN OF LUXEMBURG, and others, Respondents.

*November 13—November 27, 1908.*

*Schools and school districts: Members: Right to maintain actions: Equity: Enforcement of legal rights: Laches: Maintenance of schools: District officers: Liability: Authority to lease parochial school building.*

1. Although the right of a member of a corporation to invoke the interference of a court of equity to practically coerce the corporation to enforce its legal rights against its officers exists, equitable considerations guide and control in granting or withholding relief.

2. A court will not coerce the enforcement of a strict legal right, however clear, if thereby injustice and inequity will be done.

3. A court of equity may and should refuse to upset consummated and contemplated transactions to the hurt of those who have acted in good faith at the suit of a plaintiff who, by laches or failure to protest upon opportunity before the acts were done, has induced or justified belief that he acquiesced in and approved the acts.

4. Where plaintiffs and all other taxpayers of a school district have been cognizant of the manner of conducting a district school, and the electors of the district each year have been informed that money had been spent for the purpose of maintaining sectarian instruction, and, without protest from any, at each annual meeting directed like expenditures for the ensuing year, and, on the faith of such acquiescence, believing that the taxpayers approved, the school district officers parted with the district's money, plaintiffs at least cannot equitably ask that such officers be compelled to repay the amounts expended.

5. Under secs. 423, 430, Stats. (1898), and the affirmative grant of powers therein contained, fairly and reasonably construed, a school district may maintain a common school in a parochial school building and its discretion in that regard should not be controlled by the courts.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge.    *Affirmed.*

The defendant school district, for a period of about twenty years, rented from the defendant Congregation of the Immaculate Conception, a Roman Catholic church corporation, certain rooms in its school building and expended the school moneys of the district in paying teachers to conduct schools therein, and also paid certain small amounts for fuel, cleaning, and the like.    The building had been erected for the purposes of a parochial school by said church corporation, and the rest of the rooms therein not rented by the district were used to maintain the parochial school, and the public school conducted in the rooms rented by the school district was characterized by certain religious ceremonies, in that certain distinctive prayers of the Catholic Church were said at intervals throughout the school day, church hymns were sung, and the teachers were nuns specially designated to the service by the superior of a Catholic sisterhood to which they belonged.    In addition the scholars prior to school hours quite uniformly attended distinctively religious teaching in the adjoining church, and the school was suspended to enable their attendance upon weddings and funerals in the church.    The pupils were all children of Catholic parents, members of the church congregation, with occasional exceptions of one or two at various times during said twenty years.    The plaintiffs, members of the congregation, but also residents and taxpayers of the district, on behalf of themselves and others similarly situated, brought this action to enjoin the school board and district from persisting in maintaining the public school of the district in such manner and from paying out any moneys of the district for such purposes, and also to recover in behalf of the district all sums paid for maintenance of such school from the said church corporation and from the members of the school board who had joined in paying it out.    The trial court

found that the school so conducted had at all times been pervaded and characterized by sectarian instruction contrary to law, and granted injunction against continued maintenance thereof, but held that it was within the power of the school district and board to rent rooms as they deemed wise for the maintenance of a distinctively public school, and therefore refused to enjoin the maintenance thereof in the parochial school building. With regard to the moneys expended prior to the commencement of the suit, he held that the plaintiffs and all members of the school district had at all times had full knowledge, both before and immediately after the fact, of the manner in which the school was conducted and of the expenditure of the school district moneys for the purposes aforesaid, and that, having made no objection, they were guilty of laches such as to warrant the court in denying the prayer for the repayment of moneys expended for services rendered in good faith and with the tacit approval and acquiescence of all interested parties. The plaintiffs appeal from those parts of the judgment which deny injunction against maintenance of a public school in the parochial school building and deny recovery from the church corporation and from the members of the school board of the moneys paid out for teachers' salaries and other expenses of the school maintained heretofore.

For the appellants there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *M. H. Strehlow.*

For the respondents there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

DODGE, J.   But two questions arise upon this appeal, and they rather narrow ones. The very important questions as to what acts may constitute the giving or allowing sectarian instruction such as is prohibited in public schools by sec. 3, art. X, Const., and whether the acts done in the instant case are within that inhibition, are treated in an able and exhaust-

ive opinion by the trial court, but are not presented by the appeal. We are therefore to start with the fact that for nearly twenty years the school officers have annually paid school district moneys for support of a school where sectarian instruction was permitted. The question whether such payments were so unlawful that the school district, as a corporation, might maintain an action at law to recover them back from the recipients, or for damages against the district officers and their confederates for dissipating the school funds, was not decided, but affirmative answer was hypothetically assumed by the trial court, as also that the district will not bring any such action.

The right of a member of a corporation to invoke the interference of a court of equity to practically coerce the reluctant corporation to enforce its legal rights against its officers and their confederates is abundantly established by our decisions. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. But, since the application must be to a court of equity, equitable considerations will guide and control in granting or withholding relief. The court will not coerce the enforcement of a strict legal right, however clear, if thereby injustice and inequity will be done. In development of this rule it is well settled that a court of equity may and should refuse to upset consummated and completed transactions to the hurt of those who have acted in good faith at the suit of plaintiffs who, by laches or failure to protest upon opportunity before the acts were done, have induced or justified belief that they acquiesced in and approved such acts. *Helms v. McFadden,* 18 Wis. 191; *Cross v. Bowker,* 102 Wis. 497, 78 N. W. 564; *Frederick v. Douglas Co.* 96 Wis. 411, 425, 71 N. W. 798; *McCann v. Welch,* 106 Wis. 142, 151, 81 N. W. 996. This rule was applied by the circuit court, who found as facts that plaintiffs and all other taxpayers had been

cognizant of the manner of conducting the school, and that the electors of the district each year had been informed that the money had been spent for such purpose, and, without protest from any, at each meeting directed like expenditures for the ensuing year. Such finding is not antagonized by any clear preponderance of evidence. On the faith of such acquiescence, believing that all taxpayers approved, the defendant officers have parted with the money, and, quite obviously, must lose it if compelled to reimburse the district. These plaintiffs at least cannot equitably ask that the defendants so suffer for acts induced and invited by plaintiffs' own conduct.

2. We find no error in the trial court's refusal to enjoin the district and board from maintaining a common school in the parochial school building. Incidentally it may be noted that there is no prayer for such specific relief, but the court considered the question, and we will not rest upon that defect in the pleadings. Inferentially, at least, every school district is commanded to maintain a common school, for it shall be put out of existence if it does not. Sec. 423, Stats. (1898). True, this district owns a schoolhouse, twenty-eight feet by eighteen, which is obviously wholly inadequate for a common school free to all the 200 or more scholars of the district. *Non constat* anything in the record or evidence it may be wholly unable to construct a more commodious one. The school district has express power to vote a tax to hire a schoolhouse. Subd. 5, sec. 430, Stats. (1898). The school board are empowered, when directed by the electors, in the alternative to purchase or lease a site for a schoolhouse and to build, hire, or purchase a schoolhouse and to sell and convey any site for schoolhouse, the property of the district. Sec. 430, Stats. (1898). We find nothing either in the expression or policy of the statutes to prevent the school district in meeting assembled or the school board from hiring a building or part of a building in which to maintain the public school, not

even though the district may already have a schoolhouse and the hiring may be by way of accommodation for overflow in excess of the accommodations of the schoolhouse so owned. Hence we think that the affirmative grant of powers above mentioned, fairly and reasonably construed, is sufficient to enable the district to maintain a common school in the parochial school building and its discretion in that regard should not be controlled by the court.

We are convinced that in the respects assailed by appeal the judgment is correct.

*By the Court.*—Judgment affirmed.