A. Y. BAYNE, Doing Business as A. Y. Bayne & Company, v. P. J. THORSON, J. P. Jones, and Oscar Heide, County Commissioners and the Board of County Commissioners, and the County of Bowman.

(163 N. W. 822.)

County commissioners — boards of — bridges — contracts for — emergency cases — powers of boards — plans and specifications — sealed bids — advertising for.

Sections 3275, 3296, 1951, and 1953 of the Compiled Laws of 1913 con-

----

Note.—On sufficiency of specifications for guidance of bidder for public contract, see note in 30 L.R.A.(N.S.) 214.

strued in reference to the power of boards of county commissioners to construct bridges; *held* that, except in the emergency cases provided for in § 1953, boards of county commissioners may not contract for the construction of bridges costing more than $100, without obtaining plans and specifications of the proposed bridge and advertising for sealed bids thereon, as provided in § 1951 of the Compiled Laws of 1913.

Opinion filed June 30, 1917.

Appeal from Bowman County, Honorable *W. C. Crawford,* Judge. Plaintiff appeals.

Affirmed.

Statement of facts by BIRDZELL, J.

This is an appeal from a judgment for costs entered in favor of the defendants in an action brought to recover the contract price of bridge materials in place supplied to the county of Bowman, during the year 1912, in the construction of a certain bridge. The facts are stipulated and are in substance as follows:

The county commissioners of Bowman county duly advertised for sealed bids for furnishing materials in place for all bridge work required in the county for one year from date, the bids to be opened on April 2, 1912. Pursuant to this notice the plaintiff submitted a bid as follows:

STEEL BRIDGE MATERIAL DELIVERED F. O. B. A. Y STATION IN COUNTY.

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| I beam bridges, 8 lines | 6″ joists, per foot of bridge .................. | $6.50 |
| "      "      "      8 " | 7″ " " " " " .................. | 7.40 |
| "      "      "      8 " | 8″ " " " " " .................. | 8.30 |
| "      "      "      8 " | 9″ " " " " " .................. | 9.30 |
| "      "      "      8 " | 10″ " " " " " .................. | 11.00 |
| "      "      "      8 " | 12″ " " " " " .................. | 14.00 |
| "      "      "      8 " | 15″ " " " " " .................. | 19.00 |

| | | |
|---|---|---|
| 6″ I beam legs or piles, per lineal foot ................................. | $1.50 |
| 7″ " " " " " " " " .................. | 1.70 |
| 8″ " " " " " " " " .................. | 1.90 |
| 9″ " " " " " " " " .................. | 2.10 |

6" channel caps, per foot .............................................. $1.25

7" "   "   "   "   .............................................. 1.45

8" "   "   "   "   .............................................. 1.65

Steel angle railing, 2 lines, with posts, per foot ......................... $2.00

  " lattice   "   2   "   "   "   "   "   ......................... 4.00

Extra metal, per pound ................................................ 8¢

## BRIDGE WORK ERECTED IN PLACE.

I beam bridges, 8 lines   6" joists, per foot of bridge .................... $12.50

"   "   "   8   "   7"   "   "   "   "   "   .................... 14.00

"   "   "   8   "   8"   "   "   "   "   "   .................... 15.50

"   "   "   8   "   9"   "   "   "   "   "   .................... 16.50

"   "   "   8   "   10"   "   "   "   "   "   .................... 17.50

"   "   "   8   "   12"   "   "   "   "   "   .................... 19.50

"   "   "   8   "   13"   "   "   "   "   "   .................... 24.00

6" I beam legs or piles, per lineal foot ................................. $3.00

7" "   "   "   "   "   "   "   "   ................................. 3.25

8" "   "   "   "   "   "   "   "   ................................. 3.50

9" "   "   "   "   "   "   "   "   ................................. 3.75

10" "   "   "   "   "   "   "   "   ................................. 4.00

6" Channel caps, per foot .............................................. $2.75

7" "   "   "   "   "   .............................................. 3.00

8" "   "   "   "   "   .............................................. 3.25

24 inch steel tubular piers, per foot rise ............................... $33.00

30 "   "   "   "   "   "   "   ............................... 37.00

36 "   "   "   "   "   "   "   ............................... 44.00

42 "   "   "   "   "   "   "   ............................... 48.00

48 "   "   "   "   "   "   "   ............................... 55.00

60 "   "   "   "   "   "   "   ............................... 70.00

Steel angle railing, 2 lines, with posts, per foot ......................... $2.25

  " lattice   "   2   "   "   "   "   "   ......................... 4.50

Lumber in place furnished by contractor, per thousand ft. B. M. ........ $50.00

Placing lumber furnished by county, per thousand ft. B. M. .............. 9.00

Furnishing and placing concrete per cu. yd. ........................... 20.00

Extra metal in place, per pound ...................................... 12¢

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30 ft. to 39 ft. steel truss bridges, per lineal foot | .................... | $13.25 |
| 40 ft. to 49 ft. " " " " " " | .................... | 13.75 |
| 50 ft. to 59 ft. " " " " " " | .................... | 16.50 |
| 60 ft. to 69 ft. " " " " ' " | .................... | 17.50 |
| 70 ft. to 79 ft. " " " " " " | .................... | 20.50 |
| 80 ft. to 89 ft. " " " " " " | .................... | 21.50 |
| 90 ft. to 99 ft. " " " " " " | .................... | 25.00 |
| 100 ft. to 119 ft. " " " " " " | .................... | 28.00 |
| 120 ft. to 129 ft. " " " " " " | .................... | 32.00 |
| 150 ft. to 199 ft. " " " " " " | .................... | 36.00 |
| 200 ft. to 250 ft. " " " " " " | .................... | 40.00 |

Add 20% for trusses for concrete floor.

Above prices are figured on carload orders. For less than carload orders, 5% to be added to all prices.

For shipment in less than ninety days, add 10% to all prices.

All metal work to be painted one coat mineral paint in the shop before shipment, and an additional coat to be given in the field on all erected work.

> Respectfully submitted,
> A. Y. Bayne & Co.
> By P. L. Elliott.

The foregoing bid was accepted by the board of county commissioners, and the contract awarded to the plaintiff "for all bridge work required in the county for one year from date." After the letting of the foregoing contract, a petition was presented to the board of county commissioners asking for the construction of a bridge over Spring creek on the section line between sections 20 and 21 in Boyeson township. Under date of January 2, 1913, the county commissioners passed a resolution declaring a necessity for the construction of the bridge, and directed one of its members, P. J. Thorson, to proceed to cause a bridge to be constructed. So far as appears from the record, the only specifications for the bridge are such as might be contained in the bid of the plaintiff and appellant and a letter of Thorson's, directing the plaintiff to proceed with the work, which letter is as follows:

Bowman, N. D. Dec. 28, 1912.

A. Y. Bayne & Co.,
    Minneapolis, Minn.
Gentlemen:
    Please furnish and build for our county one 50 ft. steel truss bridge,

16 ft. roadway, with steel joists and rail, wood floor and wheel guard, on steel pile foundations and wings, located over Spring creek on section line between sections 20 and 21 in Boyeson twp. 10 rods more or less north of the D. N. McPhee residence, about 10 miles from Bowman, as per contract of April 2, 1912.

Bowman County, North Dakota.

By P. J. Thorson.

After the completion of the work, plaintiff presented an itemized bill to the county as follows:

"To erecting metal in place in one (1) 50' x 16' riveted span, in the township of Boyeson, on section line between sections 20 and 21, over Spring creek, in the county of Bowman, N. D., as follows:

| | |
|---|---:|
| 50' span, at $16.50 per foot, erect in place | $825.00 |
| 50' angle railing, at $2.25 per foot, erected in place | 112.00 |
| 50' of 7" joists at $14 per foot, erected in place | 700.00 |
| 2,600 ft. floor lumber at $50 per M erected in place | 130.00 |
| 4-7 channel caps 68' at $3 per foot, erected in place | 204.00 |
| 327' of 7" I piles at $3.25 per foot, erected in place | 1,062.75 |
| 30 yards concrete at $20 per yard, in place | 600.00 |
| Extra metal in tin and reinforcing rods, 670 lbs. at 12¢ | 80.40 |
| | $3,714.15 |
| Plus 5% for less than carload shipment, Wt. shipped, 22,621 lbs. | $185.70 |
| Plus 10% for shipment in less than 90 days, Date ordered 12/28/12—Date shipped 3/8/13 | $260.30 |
| Total | $4,160.15" |

*Scow & Young* (*G. A. Will,* of counsel), for appellant.

The statute relating to the right of foreign corporations to do business in this state before filing its certificate and appointing a resident agent and otherwise complying with such statute does not abridge the right of such a corporation to sue in this state. This statute only extends to the exercise of the powers by which it may be said to ordinarily transact and carry on its business in this state. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. ed. 1137, 5 Sup. Ct. Rep. 739;

Utley v. Clark-Gardner Lode Min. Co. 4 Colo. 369, 4 Mor. Min. Rep. 39.

It is also clear that statutes cannot be construed to impose upon foreign corporations limitations of their rights to make contracts in the state for the carrying on of commerce between the states, for that would be an invasion of the right of Congress to regulate commerce among such states. Paul v. Virginia, 8 Wall. 168, 19 L. ed. 357.

The statute means simply that no foreign corporation shall begin any business in the state with the purpose of pursuing or carrying it on, until it has filed the required certificate and otherwise complied with the law. It does not refer to the doing of a mere single act. Potter v. Bank of Ithaca, 5 Hill, 490; Suydam v. Morris Canal & Bkg. Co. 6 Hill, 217.

The bids submitted by the appellant were sent from Minneapolis, Minnesota, and all its business was transacted from the city of Minneapolis. A. Booth & Co. v. Weigand, 30 Utah, 135, 10 L.R.A.(N.S.) 693, 83 Pac. 734; Sucker State Drill Co. v. Wirtz, 17 N. D. 313, 18 L.R.A.(N.S.) 134, 115 N. W. 844.

The transaction here in question was none other than interstate commerce. Butler Bros. Shoe Co. v. United States Rubber Co. 84 C. C. A. 167, 156 Fed. 1, and cases cited; S. F. Bowser & Co. v. Savidusky, 154 Wis. 76, 142 N. W. 182; National Cash Register Co. v. Wilson, 9 N. D. 112, 81 N. W. 285; Davis & R. Bldg. & Mfg. Co. v. Caigle, — Tenn. —, 53 S. W. 240; Beard v. Union & American Pub. Co. 71 Ala. 60.

The mere fact that a foreign corporation entered into a contract with some of their stockholders, residing in the state, to buy certain articles, would not constitute a "doing of business" within the meaning of the statute. Kilgore v. Smith, 122 Pa. 48, 15 Atl. 698; Colorado Iron Works v. Sierra Grand Min. Co. 15 Colo. 499, 22 Am. St. Rep. 433, 25 Pac. 325; State v. American Book Co. 69 Kan. 1, 1 L.R.A.(N.S.) 1041, 76 Pac. 411, 2 Ann. Cas. 56; Watson Fireproof Window Co. v. Rysdon, 189 Ill. App. 134; Fuller v. Allen, — Okla. —, 148 Pac. 1008; West Coast Timber Co. v. Hughitt, 185 Ill. App. 500; Mergenthaler Linotype Co. v. Hays, 182 Mo. App. 113, 168 S. W. 239; Brennan v. Pardridge, 67 Mich. 449, 35 N. W. 85; Robinson v. Magarity, 28 Ill. 423.

Where a corporation enters into an unauthorized contract for school supplies or other materials, and uses the same, the party who furnished the goods may recover. Union School Furniture Co. v. School Dist. 50 Kan. 727, 20 L.R.A. 136, 32 Pac. 368; Gillette-Herzog Mfg. Co. v. Aitkin County, 69 Minn. 297, 72 N. W. 123.

But the burden of proof is on defendant to show the illegality of the contract. Walker v. Vermilion County, 143 Ill. App. 235; Henry County v. Gillies, 138 Ind. 667, 38 N. E. 40; Lee v. Monroe County, 52 C. C. A. 376, 114 Fed. 744; Chapman v. Douglas County, 107 U. S. 348, 27 L. ed. 378, 2 Sup. Ct. Rep. 62; Wrought Iron Bridge Co. v. Utica, 17 Fed. 316.

The county board had the right to enter into the contract for the materials to be used in the repair of bridges in their county. Bayne v. Wright County, 90 Minn. 2, 95 N. W. 456; Collom v. Bixby, 33 Minn. 50, 21 N. W. 855.

Public officials are presumed to act in accordance with the law. Webb v. School Dist. 83 Minn. 111, 85 N. W. 932; Clark v. Lancaster County, 69 Neb. 717, 96 N. W. 593; Bloomquist v. Washington County, 101 Minn. 163, 112 N. W. 253; Reed v. Anoka, 85 Minn. 294, 88 N. W. 981.

The illegality of the contract was not pleaded, was not an issue, and hence cannot be raised. Heegaard v. Dakota Loan & T. Co. 3 S. D. 569, 54 N. W. 656.

*W. A. Fleming,* State's Attorney (and *Theo. B. Torkelson,* of counsel), for respondent.

Plaintiff by contracting with defendant, the county of Bowman,. in the name of A. Y. Bayne & Company, violated the statute of this state and cannot seek relief in the courts of this state. Comp. Laws 1913, § 9710; Levinson v. Boas, 150 Cal. 185, 12 L.R.A.(N.S.) 575, 88 Pac. 825, 11 Ann. Cas. 661; Swords v. Owen, 43 How. Pr. 176, 2 Jones & S. 277; Donlon v. English, 89 Hun, 67, 35 N. Y. Supp. 82, and Gay v. Seibold, 97 N. Y. 472, 49 Am. Rep. 533.

There is no record of any action of the county board approving any plans and specifications, and there was no call for proposals to build the bridge ever published. The public was never notified that bids would be received for the building of a bridge. Comp. Laws, 1913, § 1951.

A party dealing with a municipal body is bound to see to it that all the mandatory provisions of law are complied with, and if he neglects such precaution he becomes a mere volunteer and must suffer the consequences. 15 Am. & Eng. Enc. Law, p. 1086, and long list of cases cited in note 1, p. 1087; Zottman v. San Francisco, 81 Am. Dec. 96, and note, p. 107, 20 Cal. 96; Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464; Capital Bank v. School Dist. 1 N. D. 479, 48 N. W. 363; State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585; Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726; Baker v. La Moure, 21 N. D. 140, 129 N. W. 464; Price v. Fargo, 24 N. D. 440, 139 N. W. 1054; McKinnon v. Robinson, 24 N. D. 367, 139 N. W. 580; McKenzie v. Mandan, 27 N. D. 546, 147 N. W. 808; Anderson v. International School Dist. 32 N. D. 413, L.R.A.1917E, 428, 156 N. W. 54.

To authorize the county board to enter into a contract to build a bridge such as the one here involved, a petition must be signed and presented by a majority of the freeholders residing within 3 miles of the proposed bridge. This was not done. Comp. Laws 1913, § 1951; Alstad v. Sim, 15 N. D. 629, 109 N. W. 66.

The board must secure plans and specifications, and advertise for sealed bids for the building of the bridge, to be submitted to them at their next meeting. These provisions are all mandatory. Comp. Laws 1913, § 1951; Price v. Fargo, 24 N. D. 440, 139 N. W. 1054; Hannan v. Board of Education, 30 L.R.A.(N.S.) 214, and cases cited in note, 25 Okla. 372, 107 Pac. 646; Diamond v. Mankato, 61 L.R.A. 448 and cases cited in note, 89 Minn. 48, 93 N. W. 912; Fones Bros. Hardware Co. v. Erb, 13 L.R.A. 353 and cases cited in note, 54 Ark. 645, 17 S. W. 7; Mueller v. Eau Claire County, 108 Wis. 304, 84 N. W. 430.

No contract for the particular bridge in question was ever entered into as by law provided, or at all. Price v. Fargo, 24 N. D. 440, 139 N. W. 1054; McKenzie v. Mandan, 27 N. D. 546, 147 N. W. 808; Hannan v. Board of Education, 30 L.R.A.(N.S.) 214, and note, 25 Okla. 372, 107 Pac. 646; Diamond v. Mankato, 61 L.R.A. 448, and notes, 89 Minn. 48, 93 N. W. 912; Addis v. Pittsburgh, 85 Pa. 379; Dill. Mun. Corp. 388; Re Fager, 46 N. Y. 100; Wells v. Burnham, 20 Wis. 113; People ex rel. Putnam v. Buffalo County, 4 Neb. 150; Boren

v. Darke County, 21 Ohio St. 311; State ex rel. Dunn v. Barlow, 48 Mo. 17.

The alleged contract has not been ratified by the county of Bowman through the acceptance of the bridge by the public, nor is the county liable therefor upon the principle of *quantum meruit.* Capital Bank v. School Dist. 1 N. D. 479, 48 N. W. 363; State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585; Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Fox v. Walley, 13 N. D. 610, 102 N. W. 161; 15 Am. & Eng. Enc. Law, pp. 1104, 1105 and note citing cases; Zottman v. San Francisco, 81 Am. Dec. 96, and cases cited in note, 20 Cal. 96.

BIRDZELL, J. (after stating the facts). This action having been brought upon the contract for the nonpayment of the foregoing bill, and not for the reasonable worth of the materials and labor, the only question necessary to be considered on this appeal is that of the validity of the contract under which the materials were supplied and the work done.

The appellant bases the argument for the validity of the contract upon the powers vested · in boards of county commissioners by subdivision 3 of § 3275. Comp. Laws 1913, which authorizes them "to construct and repair bridges, and to open, lay out, vacate, and change highways in the cases provided by law." The argument is that, except as may be elsewhere limited by express statutory enactment, the power conferred by the foregoing subdivision may be exercised in any manner that the county commissioners elect, and that all contracts made in exercising the powers so conferred are valid, in the absence of fraud. Section 3296, Comp. Laws 1913, provides that the board of county commissioners shall let contracts only on competitive bids. The chief subject of this section requiring competitive bidding is building projects, but it is also provided that "the provisions of this section shall apply to all contracts for fuel, stationery and all other articles for the use of the county, or labor ·to be performed therefor, when the amount to be paid for the same during any year exceeds the sum of $100; provided, that in all cases advertisements for bids therefor need not be for more than three consecutive weeks in some weekly newspaper published in such county; and provided, also, that all contracts for the

furnishing of stationery, blank books, and supplies generally for all county officers, shall be let at the first regular meeting in April to run for the period of one year."

No doubt the county commissioners in the case at bar acted in pursuance of the authority of that part of the statute quoted above in advertising and contracting for the bridge materials supplied in the instant case. Section 1951, Comp. Laws 1913, provides for the construction of bridges, upon petition of the freeholders of a civil township or of those living within a certain radius of a proposed location. In this section it is made the duty of the county commissioners to investigate the necessity of a proposed bridge, and, after the location is approved, the board is required to "advertise in the official paper in the county, for a period of thirty days, the plans and specifications of the proposed bridge, asking for sealed bids for the building of such bridge, to be submitted to them at their next regular or special meeting . . . ," and to let the contract to the lowest responsible bidder. Section 1953, Comp. Laws 1913, makes bridge building under the provision of the foregoing section subject to the supervision of the board of county commissioners, and it is expressly provided "that should any emergency arise, requiring the immediate rebuilding or repairing of any bridges, the board of county commissioners are hereby authorized to rebuild or repair, as the circumstances require, and without advertising for bids, in case said work can be performed by a responsible party, at a price not to exceed the last bid accepted by said board of county commissioners for like work." The appellants argue that, since boards of county commissioners have power under § 3275 to construct and repair bridges, such power is in no way limited by the provisions of § 1851, and that the latter section only applied where freeholders initiate, by petition, the steps looking toward the construction of a bridge. In our opinion the statutes are not subject to the broad construction contended for. It is clearly the purpose of § 3275 to group the powers of the boards of county commissioners that are elsewhere dealt with more particularly and in greater detail. For instance, the section provides that the board shall have power to levy taxes not exceeding the amount authorized by law; to equalize assessments in the manner provided by law; to establish election precincts and appoint judges in cases provided by law. When the contents of the entire section is considered, it

becomes quite clear that the section is not designed to confer broad powers of government upon the county board, but rather as a convenient expression in summary form of the powers to act concerning certain matters as elsewhere provided by law. To give the statute the interpretation contended for would be to vest in the board of county commissioners such power to construct bridges at their own discretion and will as would preclude entirely the exercise of a similar power upon petition. The bridges required to be built in response to petitions are to be paid for out of the county bridge fund; and if the commissioners are free to exhaust this fund by building bridges upon their own motion, they can render ineffectual all petitions of freeholders. It would be strange that, in proceeding in response to a petition of freeholders, the legislature should require thirty days' advertisement in the official paper of the plans and specifications of the proposed bridge, and that sealed bids be submitted therefor, while no such requirement would exist with reference to those bridges that might be constructed by the board of county commissioners acting upon their own initiative. It seems that the legislature did not contemplate the exercise of so broad a power by boards of county commissioners; for, in § 1953, it is expressly provided that in emergency cases the board of county commissioners may rebuild and repair any bridges, "without advertising for bids, but at a price not to exceed the last bid accepted by the board of county commissioners for like work." If the board had been thought to have a general authority to build and repair bridges, without advertising for bids, there was no occasion to make this provision for emergency cases. The bridge in question is a new bridge, and was not constructed under the authority of § 1953. It appears conclusively that the requirements of § 1951 have not been complied with, consequently the contract between the defendant and plaintiff, in so far as it affects the construction of the bridge in question, is illegal and void, and there can be no recovery thereunder. The judgment of the District Court is affirmed.

ROBINSON, J. I dissent.